**WO**

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

|                              |   |                    |
|------------------------------|---|--------------------|
| Kevin Perry, et al.,         | ) |                    |
|                              | ) | CV-16-555-TUC-DCB  |
|             Plaintiffs,      | ) | **ORDER**          |
|                              | ) |                    |
| v.                           | ) |                    |
|                              | ) |                    |
| Peak Property and Cas. Ins., | ) |                    |
|                              | ) |                    |
|             Defendant.       | ) |                    |

Before the Court is Defendant's Motion for Judgment on the Pleadings and Plaintiffs' Cross Motion for Judgment on the Pleadings. Oral argument was heard by the Court on November 28, 2016. The Court now rules.

**SUMMARY**

In August 2016, a declaratory relief, breach of contract and bad faith action was originally filed in state court, then removed to federal court based on diversity. Defendant immediately filed a Motion for Judgment on the Pleadings (DMJOP) and Plaintiffs filed a Joint Cross Motion for Judgment on the Pleadings (XPMJOP). Plaintiffs are: Farmers Ins. Co. (Farmers), Renee Holguin Perry and Kevin Perry (Holguin Perry)(divorced in May 2014), and Nancy Smith (Smith). Defendant is Peak Property and Cas. Ins. Corp. (Peak), Holguin Perry's automobile insurance

1

carrier, doing business in Wisconsin. This action is in federal court based on diversity because the car accident occurred in Arizona involving all Arizona citizens with the Defendant being located and incorporated in the state of Wisconsin. Arizona law applies.

**BACKGROUND**

This case arises out of a traffic accident that occurred on January 22, 2013. It involved two primary vehicles: the Lexus was driven by Perry Holguin, who ran a red light and hit Smith, who was driving a Ford. The accident collaterally involved three other vehicles. The Lexus driven by Perry Holguin was insured by Peak. One of the collaterally involved vehicles was insured by Farmers. Farmers, Holguin Perry and Smith have jointly filed this action against Peak for failing to compensate the injured resulting in the breach of contract (Count Two) and bad faith allegations (Count Three).

At the time of the accident, Holguin Perry had a policy of automobile insurance with Peak that insured them for liability up to $100,000/$300,000 for bodily injury and $10,000 for property damage stemming from an accident. The Policy as initially written was effective November 10, 2012 through May 10, 2013. The Policy was on a monthly payment plan.

On December 20, 2012, Peak mailed a document entitled "Installment Notice" showing a minimum payment of $286.37 due on January 9, 2013. The Installment Notice states: "Payments received after the cancel date or in an amount less than the minimum amount due may incur an additional fee." (DMJOP, Ex. 2.)

On or about January 18, 2013, Peak mailed a document entitled "Nonpayment Cancellation Notice" with a print date of January 18, 2013 (the Notice). (DMJOP, Ex. 4.) The Notice states: "If a minimum payment of $286.37 is not received by 01/19/2013 your coverage will end on 01/19/2013 12:01 a.m. Standard Time." (Id.). The Notice goes on to state that the insured may reinstate the Policy by paying $286.37 by January 19, 2013 at 12:01 a.m. (midnight).  The installment payment was due to be paid by January 9, 2013 and Holguin Perry did not tender a payment to the insurance company until January 23, 2013.

The Holguin Perrys allege they did not receive notice of the notice of cancellation until January 23rd. Holguin Perry paid $294.37 over the phone to Peak on January 23, 2013. The Holguin Perrys paid the required $286.37 in the Notice plus a $5.00 late fee.

On December 3, 2013, Smith filed her Complaint against the Holguin Perrys in state court. Peak refused to settle the matter or defend the Holguin Perrys because it took the position that there was a lapse in the insurance contract and they were not covered by insurance on the date of the accident, January 22, 2013. As a result, the Perrys entered into a Settlement Agreement and Assignment (*Damron* Agreement) with Smith and Farmers. Smith, the Holguin Perrys and Farmers filed the action against Peak alleging causes of action for declaratory relief, breach of contract and insurance bad faith.

**LEGAL STANDARD OF REVIEW**

Federal Rule of Civil Procedure 12(c) permits a party to move for judgment on the pleadings after the pleadings are closed. Judgment on the pleadings "is properly granted when there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of

3

law." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir.2009). For a Rule 12(c) motion, all material allegations contained in the nonmoving party's pleadings are accepted as true. *Hal Roach Studios v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir.1989); *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir.2012).

The district court's review is generally limited to the contents of the complaint. The court may consider documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice without converting the Rule 12(c) motion into a motion for summary judgment. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir.2001).

When a Rule 12(c) motion raises the defense of failure to state a claim, the standard governing the motion is the same as that governing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 810 (9th Cir.1988). Rule 12(b)(6) allows dismissal where a complaint fails "to state a claim upon which relief can be granted." *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir.1998). Conclusory allegations of law and unwarranted inferences are insufficient to defeat such a motion. Id. The Court need not accept as true allegations that contradict matters properly subject to judicial notice or allegations contradicting the exhibits attached to the complaint. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.2001).

**DISCUSSION**

Peak argues that there are no material questions of fact precluding entry of judgment in its favor on Count One, declaratory relief. Peak

4

goes on to argue that because no insurance policy was in effect at the time of the traffic accident, Plaintiffs' claims for breach of contract (Count Two) and bad faith (Count Three) fail as a matter of law.

A.R.S. § 20-1632.01 outlines the basic requirements an insurer must follow when it cancels an automobile insurance policy due to nonpayment of a premium. The statute provides in pertinent part that (a) the policyholder is entitled to a minimum seven day grace period, (b) the insurer must mail a notice of cancellation, and (c) the cancellation is effective on the date the notice is mailed. A.R.S. § 20-1632.01. The Holguin Perry's policy provisions mirror the Arizona statute. In line with A.R.S. § 20-1632.01(A), the contract on which Plaintiffs base their entire complaint provides that the insured was entitled to a minimum grace period of seven days for the payment of any premium due.

The policy further states that in the event of nonpayment, the insurer may cancel by mailing a notice of cancellation at least eight days after the due date, and that the cancellation will be effective the date the notice is mailed. Again, this is right in line with A.R.S. § 20-1632.01(B) (stating that after the seven day grace period, "the insurer must mail a notice of cancellation to the policyholder by first class mail," and that "cancellation... is effective on the date the notice is mailed to the policyholder."). In short, both the Holguin Perry's policy and Arizona law required Peak to give the insured seven days' grace period to pay their premium, to mail a notice of cancellation eight or more days after the premium due date, and that cancellation was effective on the date of mailing.

The Complaint's factual allegations demonstrate that Peak complied with each of these requirements. Plaintiffs allege that Peak mailed an

Installment Notice to the Holguin Perrys on December 20,2012, twenty days prior to the premium due date, which notified the Perrys that the policy premium of $286.37 had to be paid by January 9,2013. With the premium due on January 9th and the seven-day grace period allowed by A.R.S. § 20-1632.01, the policy ended on January 16,2013. Peak was authorized to mail a notice of cancellation on day one. But it was not until day nine after the missed payment that Peak printed and mailed the Nonpayment Cancellation Notice. This fully complied with A.R.S. § 20-1632.01. By Arizona statute and the policy's provisions, cancellation was effective on January 18th, the date of mailing the Nonpayment Cancellation Notice. The Nonpayment Cancellation Notice clearly stated, "You are now driving without insurance protection."

There are no material questions of fact: the Holguin Perry's policy was on a monthly payment plan; Peak mailed an Installment Notice to the Holguin Perrys advising their payment was due on January 9, 2013; the Holguin Perrys did not pay their policy premium bill by January 9, 2013; A.R.S. § 20-1632.01 required Peak to allow the Holguin Perrys at least seven days after the premium due date to pay before cancelling and this grace period expired on January 16th, before the accident and before the Holguin Perrys paid anything; on January 18, 2013, nine days after the premium due date, Peak mailed the Nonpayment Cancellation Notice to the Holguin Perrys; the Nonpayment Cancellation Notice stated that if payment was not received by January 19, 2013, the Holguin Perry's policy would be cancelled and coverage would end on January 19th; the Nonpayment Cancellation Notice specifically advised the Holguin Perrys that: "You are hereby notified in accordance with the terms and conditions of the above mentioned policy, and in accordance with state law, that your

6

insurance will cease at and from the hour and date mentioned above. You are now driving without insurance protection."; the Holguin Perrys did not pay their premium by January 19 but did tender payment on January 23 of the full amount plus a late payment fee; and, the traffic accident occurred on January 22, 2013.  It is appropriate for this Court to rule on the motions for judgment on the pleadings as a matter of law, because the properly pleaded facts are uncontradicted.

Plaintiffs' arguments in their favor boil down to two: 1) either the Nonpayment Cancellation Notice was a "clear and unequivocal" open-ended offer for the Holguin Perrys to reinstate the policy after the cancellation date, without any lapse in coverage, for an indefinite period of time; or 2) the Nonpayment Cancellation Notice was ambiguous and therefore ineffective to cancel the coverage.

The Notice of Nonpayment Cancellation Notice was not an open-ended offer that the Holguin Perrys could accept. It notifies the insureds that (a) the cancellation is effective 12:01 a.m. on January 19th; (b) they are now driving without insurance; (c) they have the right to complain to the Director of Insurance about their cancellation; and (d) they might be able to obtain insurance through another carrier.  Further, the contract argument is foreclosed by Arizona law, specifically *Norman v. State Farm Mut. Auto. Ins. Co.*, 201 Ariz. 196, 201 (Ct. App. 2001) (cancellation notice is effective even if it allows for cancellation on a date later than the date on which the notice was mailed). Peak's Nonpayment Cancellation Notice is an even clearer cancellation than *Norman*'s, because nowhere does Peak's Notice contain any option for the Holguin Perrys to pay after the cancellation date and have the policy reinstated. Nor does it contain an "amount due." The Peak Notice says,

"If a minimum payment of $286.37 is not received by 01/19/2013 your coverage will end on 01/19/2013 at 12:01 a.m. Standard Time. You are hereby notified in accordance with the terms and conditions of the above mentioned policy, and in accordance with state law, that your insurance will cease at and from the hour and date mentioned above. You are now driving without insurance protection. Reason(s) for Cancellation: NONPAYMENT OF PREMIUM." (DMJOP, Ex. 4.) This language could not be more clear. As the *Norman* court concluded, this Notice does not even remotely suggest that the Holguin Perrys could pay to reinstate the policy after the 19th of January, the effective cancellation date – and certainly not without any lapse in coverage.

Plaintiffs other argument is that the Nonpayment Cancellation Notice was ineffective to cancel because it did not strictly comply with A.R.S. § 20-1632.01(B). *Norman* rejected this very argument. *Norman*, 201 Ariz. at 200-201; *see also Moore v. American Family Mut. Ins. Co.*, 2007 WL 2725262, *3 (D. Ariz. 2007). As *Norman*[1] recognized, A.R.S. § 20-1632.01(B) permits an insurance company to cancel a policy for nonpayment of premium effective either: (1) upon mailing of a notice of cancellation, *or* (2) upon a later date provided in the notice. The fact that the notice provides a later date does not render the notice ineffective or invalid. It simply makes the cancellation effective on that later date stated in the Notice rather than the date on which the Notice was placed in the mail. In either case, the insured's receipt or knowledge of the notice is irrelevant. Cancellation is never hinged on the insured's receipt of

---

[1] *Norman* rejected *Elkins v. State Farm Mutual Automobile Insurance Co.*,197 W. Va. 412,475 S.E.2d 504 (W. Va. 1996) (language of the Notice indicating that an offer is being made).

the notice, or knowledge of the cancellation date, or knowledge of the mailing date. *Norman*, 201 Ariz. at 200-01. The policy cancels either on the date of mailing, or on the date set forth in the Notice. Here it was on January 19th, the date set forth in the Notice. Nothing in the Notice rendered it ineffective. "Knowledge" about the extra 24-hour period is wholly irrelevant, because both Arizona law and the policy hinge cancellation on a date certain (the date the Notice is mailed), not on the insured's "prior knowledge" of the extra grace period. *Norman*,201 Ariz. at 200-201; *see also Moore v. American Family Mut. Ins. Co.*,2007 WL 2725262, *3 (D. Ariz. 2007) ("the statute is only concerned with whether the notice of cancellation was properly mailed to the insured. The statute is not concerned with whether the insured received actual notice of the cancellation").

Plaintiffs similarly err in making the legal assertion that the Nonpayment Cancellation Notice was an "offer of coverage." To be clear, the offer to continue coverage was made via the December 20,2012 Installment Notice (that their premium was due January 9th), which actually states "This is the only Installment Offer you will receive. We do Not send reminder Installment offers." (DMJOP, Ex. 2.) The Nonpayment Cancellation Notice simply alerted the Holguin Perrys that their failure to pay the premium was resulting in the cancellation of their policy. As *Norman* held, graciously giving the insured one more 24-hour period to tender the past-due payment did not supercede the fact that the Holguin Perrys missed the "premium due date" by 10 days.

Plaintiffs argue that the policy is ambiguous because Form PAP1 (3/08) (which would have required the company to mail notice of cancellation at least ten days prior to the cancellation effective date)

9

"conflicts" with the Arizona Endorsement (Form PPA-AZ 11/11). The Arizona Endorsement clearly states that it "replace[s Form PAP1] in its entirety." The Arizona Endorsement does not "create two different requirements for Peak to cancel the Policy," as Plaintiffs argue. A.R.S. § 20-1119, which sets forth rules for construing insurance policies, states that every insurance policy: shall be construed according to the entirety of is terms and conditions as set forth in the policy and as amplified, extended or modified by any rider, endorsement or application attached to and made part of the policy. 2 *Title Ins. Law* §18:19 (2016 ed.).

Plaintiffs next err in suggesting that the Lienholder/Additional Insured Termination Notice sent to the lienholder (but not to the Holguin Perrys) makes the Cancellation Notice ambiguous. Obviously, when an insured fails to pay his policy premiums, the policy is cancelled. But it is only fair to grant the lienholder some additional time to obtain separate insurance to protect its financial interest, since the lienholder has no control over the insured's payment of premiums. For this reason, a policy's loss payee endorsement essentially creates two separate contracts of insurance within the policy – one with the lienholder and the other with the insured.

Plaintiffs argue that they should have coverage because: (1) the Holguin Perrys expected Peak to comply with the terms of the policy; (2) the Holguin Perrys did not expect Peak to make an offer that was impossible to accept; and (3) the Holguin Perrys expected their policy to be reinstated after the cancellation date with no repercussion or lapse in coverage. These are not "reasonable expectations" arguments; instead, they are nothing more than "fervent hopes that coverage exists."

*Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.*, 140 Ariz. 383, 390 (1984). The reasonable expectations doctrine does not apply, and it does not operate to create coverage here.

In a diversity action, a federal district court must apply the substantive law of the forum state. *Kabatoff v. Safeco Inc. Co. of America*, 627 F.2d 207, 209 (9th Cir. 1980). Plaintiffs urge this Court to treat this as an offer/acceptance contract scenario. On the contrary, basic contract principles do not apply in light of well-established Arizona cases interpreting and applying the applicable state statutes that govern the resolution in this action. The *Restatement (Second) of Contracts* and *Perry v. Ronan*, 225 Ariz. 49, 53 (Ariz. Ct. App. 2010) are likewise inapplicable.

Because the Court is granting the Defendants' Motion for Judgment on the Pleadings as to Count One, declaratory relief, there was no contract of insurance in place at the time of the accident and therefore the remaining Counts Two and Three of Plaintiffs' complaint fail as a matter of law. There can be no breach of a contract where no contract exists. *Norman,* 201 Ariz. at 203 (upholding summary judgment on the breach of contract claim where no contract exists). Likewise, where no contract exists, there can be no claim for bad faith. *Id*. at 198 ("we reiterate the well-settled principle that a contract must exist before there can be a breach of the covenants of good faith and fair dealing implied in every contract"); *see also Manterola v. Farmers Ins. Exchange*, 200 Ariz. 572, 579 (Ct. App. 2001) ("a bad faith claim based solely on a carrier's denial of coverage will fail on the merits if a final determination of noncoverage ultimately is made).

## CONCLUSION

In short, the uncontradicted allegations of Plaintiffs' Complaint establish that the policy was cancelled on January 19th. Peak's Nonpayment Cancellation Notice met the requirements of both Arizona law and the policy terms. There was nothing ambiguous or illusory about it. *See Hadley v. Southwest Properties, Inc.*, 116 Ariz.503, 506 (1977) (the interpretation of an insurance policy, like any written instrument, is a question of law to be determined by the Court).

Defendant's MJOP on Count I will be granted as a matter of law. As to Counts Two and Three, to prevail on a breach of contract claim, a plaintiff has the burden "of proving the existence of the contract, its breach and the resulting damages." *Graham v. Asbury*, 112 Ariz. 184, 185 (1975). Because the Holguin Perry's insurance policy with Peak was properly and legally lapsed on January 19th, there was no contract between the parties on January 22nd, the date of the accident/loss. Because no contract existed, Plaintiffs' claims for breach of contract and bad faith fail as a matter of law. *See Norman*, 201 Ariz. at 198.

Accordingly,

**IT IS ORDERED** that Defendant's Motion for Judgment on the Pleadings (Doc. 4) is **GRANTED** and Plaintiffs' Joint Motion for Judgment on the Pleadings (Doc. 6) is **DENIED**. All parties are to bear their own attorney fees and costs. The Clerk's Office should enter the Final Judgment in accordance with this Order. This action is terminated.

DATED this 5th day of December, 2016.

David C. Bury
United States District Judge